Argued and submitted February 7, reversed and remanded with instructions
September 10, 1986

In the Matter of the Compensation of
Rodger Blank, Claimant.
LOUISIANA-PACIFIC CORP.,
*Petitioner,*

*v.*

BLANK et al,
*Respondents.*

(84-07206 and 84-06182; CA A36289)

724 P2d 922

Patric J. Doherty, Portland, argued the cause for petitioner. With him on the brief were Ronald W. Atwood and Rankin, McMurry, VavRosky & Doherty, Portland.

James F. Larson, Prineville, waived appearance for respondent Blank.

Craig Alan Staples, Portland, argued the cause for respondents Hudspeth Sawmill and EBI Companies. With him on the brief was Roberts, Reinisch & Klor, P.C., Portland.

Before Joseph, Chief Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Louisiana-Pacific Corporation seeks review of a Workers' Compensation Board order which affirmed the referee's order holding it responsible for claimant's back condition after April, 1984. The issue is whether claimant suffered an aggravation (the responsibility of Hudspeth Sawmill and EBI) or a new injury (the responsibility of Louisiana-Pacific). We hold that Hudspeth Sawmill and EBI are responsible and reverse.

In early 1981, claimant hurt his back while working for Hudspeth Sawmill. Over the next few weeks, he made several attempts to return to work. However, each time he experienced such extreme pain that he could not continue. In May, 1981, a myelogram was performed, revealing an L5-S1 herniated disc. Claimant declined Dr. Newby's initial recommendation of surgery and instead opted for conservative treatment. Between June and August, 1981, two orthopedic surgeons concluded that claimant was medically stationary, that he was unable to return to his previous job and that he should avoid repetitive bending. On August 19, 1981, Newby, a neurosurgeon, stated:

> "[Claimant] is a good example of a person who has a herniated disc that causes symptoms primarily with strenuous activity but is otherwise relatively asymptomatic in the interim * * *."

On October 19, 1981, a determination order issued, awarding claimant no permanent disability.

Over the next two years, claimant received no medical treatment for his back. He did, however, experience some constant back pain, which increased during exertion. He had numbness in his leg about once every six months. During that time, he held several jobs, including relief cook, disc jockey, fire fighter and surveyor.

In August, 1983, claimant started working full time for Louisiana-Pacific, flipping slabs as they passed on a conveyor belt. Those slabs were 16 feet long and varied from five to 100 pounds in weight. During the first few months, claimant had occasional "bad days" with increased back pain. However, by early 1984, his "bad days" became more frequent, and interfered with his work. He also began to experience

numbness in his left leg on a daily basis. At that point, claimant returned to Newby for treatment. A CT scan in May, 1984, revealed a moderate left-sided disc protrusion at L5-S1. Because of persistent and increasing pain, claimant agreed to undergo surgery. On July 18, 1984, Newby performed a micro-surgical lumbar discectomy.

After receiving Newby's reports regarding the need for surgery, EBI denied the aggravation claim and requested an order under ORS 656.307. Thereafter, claimant filed a new injury claim against Louisiana-Pacific, which denied respon-sibility. On July 18, 1984, the .307 order issued, designating Louisiana-Pacific as the paying agent pending a hearing on responsibility.

Dr. Duff, an orthopedic surgeon, examined claimant on September 7, 1984, at the request of Louisiana-Pacific. Duff stated that claimant's deterioration was what one would expect in the normal course of his condition and that he doubted that claimant's work activity at Louisiana-Pacific had any bearing on the course of the back problem. Newby disagreed. He testified that non-surgical disc herniations spontaneously improve with time more often than they deteri-orate and that claimant's fairly constant use of his back at Louisiana-Pacific could have caused additional injury to his back and thereby have contributed to his need for surgery. He also testified, however, that claimant's underlying back condi-tion had not worsened.

After a hearing, the referee found that claimant had suffered a new injury and held that it was the responsibility of Louisiana-Pacific:

> "[The Supreme Court has implied] that if conditions at a subsequent employment *do contribute to disability* then responsibility will shift to the employer whose work contrib-uted. The Supreme Court made no mention of the require-ment that a 'traumatic incident' occur before responsibility could be shifted.
>
> "* * * * *
>
> "Although it is a close case, I find the preponderance of evidence, consisting of Dr. Newby's opinion, the nature of the work and the chronology, to be that claimant's work activity with Louisiana Pacific did independently contribute to his

disability and the need for medical treatment." (Emphasis in the original.)

The Board affirmed.

Like *Hensel Phelps Construction v. Mirich*, 81 Or App 290, 724 P2d 919 (1986), this case falls squarely within Larson's back injury example. 81 Or App at 294. Claimant testified that he was not pain-free during the two or three years before going to work for Louisiana-Pacific. That period of continuing symptoms culminated in a second period of disability after claimant began working for Louisiana-Pacific. There is no evidence that claimant's work at Louisiana-Pacific contibuted independently to a worsening of his underlying back condition.

Newby testified:

"Q. [Louisiana-Pacific's attorney] When you operated upon him in * * * 1984, did you find — was the disc that you worked on, was that a new disc herniation? Had something new happened to the disc?

"A. I can't find a report of him having a second myelogram, but I am almost certain I did two myelograms, but, the defect both on the CT scan in May of '84 and the defect in '81, there was not any appreciable change in the way they looked on those studies.

"Q. Is it then true that the defect that you surgically repaired in 1984, the defect that had occurred in 1981?

"A. That's correct.

"Q. Then we can say that the cause of the defect is the injury that occurred in 1981 at Hudspeth?

"A. Yes.

"Q. Is that the direct cause of the injury at Hudspeth in 1981, is that the direct cause of the myelographic defect first identified in 1981, and then surgically repaired in 1984?

"A. Correct.

"Q. And, had anything happened to the defect in the intervening two to three years, in terms of an increase in the size of the defect?

"A. On the x-ray studies — are you referring to the x-ray studies?

"Q. Had anything changed in the nature of the defect?

"A. I couldn't tell any change."

Thus, even claimant's doctor agrees that claimant's work at Louisiana-Pacific did not independently contribute to the causation of the disabling condition. Hudspeth Sawmill and EBI are responsible. *Hensel Phelps Construction v. Mirich, supra.*

Reversed and remanded with instructions to enter an order holding Hudspeth Sawmill and EBI responsible.